IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CORY MEEK | : |
|       Plaintiff | : |
| | :    CIVIL ACTION NO: |
| v. | : |
| | : |
| LANCASTER MENNONITE SCHOOL AND | : |
| PAM TIESZEN AND LORRI HENGST | : |
| | : |
|       Defendants | : |

**COMPLAINT**

**JURY TRIAL DEMANDED**

**INTRODUCTION:**

1. This action is brought by Cory Meek to redress his deprivation of rights under the Americans with Disabilities Act as amended (ADA/ADAAA), and violations of the Pennsylvania Human Relations Act (PHRA). The Lancaster Mennonite School Defendants subjected the disabled Plaintiff to disparate treatment, a hostile work environment, denied reasonable accommodation, retaliation for engaging in protected activity and wrongful discharge. The disabled Plaintiff was denied reasonable accommodation accorded ALL staff and faculty except him. In support of these claims, Plaintiff Cory Meek alleges:

**JURISDICTION AND VENUE**:

2. Original jurisdiction founded on the existence of questions arising under particular statutes. The action arises under the Americans with Disabilities Act and Americans with Disabilities Act as amended (ADA/ADAAA).

1

3. Jurisdiction founded upon principals of pendent jurisdiction under 28 U.S.C Section 1367 that authorizes the court to supplemental jurisdiction over any claims against parties that are part of the same controversy as the claim that provides the basis for the court's original jurisdiction.

4. Defendant Lancaster Mennonite School is an employer with more than fifteen employees doing business in Lancaster County, Commonwealth of Pennsylvania.

5. The matter in controversy exceeds, exclusive of interests and costs, the sum of one hundred thousand dollars.

6. The unlawful practices and harm complained of occurred in Lancaster County in the Commonwealth of Pennsylvania where the defendant employer conducts business and Plaintiff performed services on behalf of the defendant employer.

7. Plaintiff complied with all the conditions precedent to the filing of this complaint. The Equal Employment Opportunity Commission (EEOC) issued to Plaintiff Cory Meek his Notice of Rights that Plaintiff received on September 3, 2020. Plaintiff timely filed his complaint within the required 90 days from receipt of his Notice of Rights.

**PARTIES:**

8. Plaintiff Cory Meek is a citizen of Lancaster County in the Commonwealth of Pennsylvania. Plaintiff worked as the Director of Information Technology for Defendant Lancaster Mennonite School (LMS).

9. Defendant Lancaster Mennonite School (LMS) is a private Christian based educational institution serving prekindergarten through high school at three (3) separate campuses in Lancaster County, Pennsylvania.

10. At all times relevant, Defendant Lancaster Mennonite School acted by and through all administrators, management, superintendent, managers, directors, supervisors, board of directors and all other agents for Lancaster Mennonite School. Said acts and failures to act were with the scope of such agency and/or employment, and Defendant Lancaster Mennonite School participated and/or ratified the unlawful acts.

11. Defendant Pam Tieszen is the School System Superintendent for Lancaster Mennonite School. Defendant Superintendent hired the plaintiff and he reported directed to her. She was a decision maker relative to Plaintiff's terms and conditions of employment and Plaintiff's involuntary separation from employment. At all times relevant, Defendant Tieszen acted individually and acted on behalf of Lancaster Mennonite School. Defendant Tieszen aided and abetted discrimination directed at Plaintiff Cory Meek.

12. Defendant Lorri Hengst is the CFO/Director of Business Operations for Lancaster Mennonite School. She oversaw human resources during the plaintiff's tenure of employment and was involved with his hire and wrongful discharge. At all times relevant, Defendant Hengst acted individually and acted on behalf of behalf of Defendant Lancaster Mennonite School. Defendant Hengst aided and abetted discrimination directed at Plaintiff Cory Meek.

**CLAIMS:**

13. Plaintiff Cory Meek is a disabled male.

14. Plaintiff is a member of protected classes based on his disability and retaliation for engaging in protected activity.

15. Plaintiff was traumatized in 2014 when he discovered his then longtime girlfriend brutally murdered in her home. See News Releases attached Exhibit A.

16. Plaintiff suffers from Post- Traumatic Stress Disorder (PTSD), depression and anxiety since 2014 as a result of discovering his girlfriend brutally murdered in her home. The mental disability affects Plaintiff's major life activities including communicating, concentrating, thinking, sleeping, and enjoyment of life.

17. Plaintiff treats for his disability. His medical care and treatment did not impact his ability to perform his job duties for Lancaster Mennonite School and he fulfilled the obligations of his professional contract.

18. March 2019, Plaintiff applied for the position of Director of Information Technology (IT) for Defendant Lancaster Mennonite School.

19. Plaintiff demonstrated his qualifications for the position as IT Director. Plaintiff is a broadly experienced and highly skilled information technology professional. He graduated from the University of Pennsylvania with a Bachelor of Science in Engineering. He studied computer science and engineering. He has extensive information technology work experience. Attached are Plaintiff's Resume at Exhibit B and Detailed Case Study at Exhibit C that Plaintiff presented to Lancaster Mennonite School (LMS) Defendants in support of his application.

20. During the interview with Defendants Pam Tieszen and Lorri Hengst, Plaintiff disclosed that he was disabled from the traumatic event in 2014 when he discovered his girlfriend brutally murdered in her home. Plaintiff disclosed that he treats for his disability.

21. May 2019, Defendants Pam Tieszen and Lorri Hengst hired Plaintiff as the Director of Technology for Lancaster Mennonite School.

22. Plaintiff assumed the full time position as Director of Information Technology on July 1, 2019.

23. The extensive job description set forth that the Director of Technology oversaw the LMS technology program and managed an IT staff that specifically included supervision and cooperation with the Network and Systems Administrator. A copy of the Job Description is attached at Exhibit D.

24. On July 1, 2019, his first day of employment as the director, Plaintiff learned that the Network & Systems Administrator, Dan Baker, had resigned. Defendants did not hire a replacement and left the position vacant. The staff for the IT Department lost the crucial systems operator position who oversaw the information technology hardware, software, networking, telecommunications and security.

25. The staff for the IT Department was then solely the plaintiff and one part-time Help Desk Coordinator, Paula McCuen. Plaintiff had to assume the separate duties of Network & Systems Administrator, in addition to his duties as director. Plaintiff performed the essential functions of his director position and the duties of Network & Systems Administrator. Plaintiff worked hours outside of the school day and during the winter vacation to complete the work.

26. On or about November 11, 2019, Defendants requested specific information regarding Plaintiff's disability. Plaintiff willingly complied and provided the information from his licensed therapist.

27.     Thereafter the plaintiff's work conditions changed for the worse with increased demands that required him to work during the winter break when the staff and faculty were otherwise on holiday and the building was closed.  Plaintiff was targeted and singled-out.  Defendants relocated Plaintiff's work space from the Book Building to the System Office Building down the hall from the named individual administrators.  Plaintiff was removed from his workshop and hardware inventory necessary for his work and removed from his subordinate assistant Pam McCuen, Help Desk Coordinator making his job more difficult and stressful.

28.     January 2020, Plaintiff engaged in protected activity.  Plaintiff approached the named individual defendants and protested to the changed and harsh work conditions placed on him a member of a protected class for the disabled.

29.     On February 6, 2020, the named individual defendants gave the plaintiff an ultimatum to resign or go on an involuntary thirty (30) days unpaid medical leave.

30.     Plaintiff had no choice but accept the unpaid medical leave with oversight by his treating therapist who complied with the defendants' requirement to communicate with them during the plaintiff's medical leave.  Defendants required that they monitor Plaintiff's treatment during his leave.

31.     Plaintiff by and through his health provider, Michelle Wegman, complied with the Defendant Employer's mandates.  On Plaintiff's behalf, Michelle Wegman requested that the defendants engage in the interactive process set forth under the ADA/ADAAA.

32.     While on medical leave, on February 27, 2020, the named individual defendants summoned Plaintiff into the office and presented him with a punitive

6

Performance Improvement Plan with follow-up dates through June 22, 2020.  Defendants Tieszen and Hengst threatened the plaintiff that he must have his physician, not his treating therapist, clear him for return back to full-time work by March 31, 2020 or lose his job.  Defendants engaged in outright acts of intimidation laced with blatant threats of termination.

33. On March 12, 2020, Plaintiff's physician returned him to part-time work beginning April 2, 2020 and return to full-time work two (2) weeks later, April 16, 2020. Defendants unjustly denied this reasonable brief extension of time in violation of the ADA/ADAAA.

34. In the alternative, before and no later than March 31, 2020, Plaintiff sought to return to full time working remotely comparable and likewise to the entire staff and faculty working remotely as of March 16, 2020, due to COVID-19 Pandemic.

35. On March 16, 2020, Defendant Lancaster Mennonite School closed for the remaining school year due to the Pandemic.  See attached Facebook "LM Closing School for Two Weeks Effective March 16-27" at Exhibit E and Facebook "LM School Buildings Closed For Remainder of 2019-2020 Academic Year" at Exhibit F.

36. Defendants denied the plaintiff the reasonable accommodation to work remotely that was accorded the entire staff and faculty.

37. On March 31, 2020, Defendants wrongfully discharged the plaintiff from employment.

38. Work at Home/Telework is a reasonable accommodation.  See EEOC Guidelines at Exhibit G: "However, if an employer does offer telework, it must allow employees with disabilities and equal opportunity to participate in such a program."

7

39. Plaintiff was denied equal opportunity to participate in remote work that was offered to the entire faculty and staff beginning March 16, 2020. Plaintiff was wrongfully denied equal conditions and wrongfully denied equal terms of employment.

40. The LMS Defendants did not engage in the interactive process required under the ADA/ADAAA.

41. The LMS Defendants' business reason, if any, for termination was pretext for discrimination.

42. Defendants failed to comply with their own policies and procedures. Plaintiff was denied equal conditions of employment.

43. Part-time Help Desk Coordinator Paula McCuen replaced the plaintiff as Director of Technology. Ms. McCuen is not disabled. The disabled Plaintiff was more qualified for the director position.

44. The LMS Defendants created cruel, harsh and hostile work conditions that aggravated the plaintiff's disability and caused him emotional distress.

45. The LMS Defendants wrongfully interfered with the Plaintiff's rights and protections under ADA/ADAAA.

46. The LMS Defendants subjected Plaintiff to disparate and adverse treatment on the basis of his disability.

47. The LMS Defendants subjected Plaintiff to harassment and a hostile work environment that was severe and/or pervasive.

48. The LMS Defendants retaliated against Plaintiff for engaging in protected activity, requesting accommodation and exerting his protected rights under the ADA/ADAAA.

49. Plaintiff suffered harm, losses and damages as a result of the LMS Defendants' joint and separate actions.

50. Plaintiff timely filed administrative charges of discrimination against the Lancaster Mennonite School Defendants with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission. Plaintiff exhausted his administrative remedies.

## COUNT I

## VIOLATIONS OF THE ADA/ADAAA

## CORY MEEK V LANCASTER MENNONITE SCHOOL

51. The allegations of paragraphs 1 thru 50 are incorporated by reference.

52. The conduct by Defendant Lancaster Mennonite School described above constitutes violations of the Americans with Disabilities Act as amended.

53. The conduct by Defendant Lancaster Mennonite School described above was willful within the meaning of the Americans with Disabilities Act as amended.

**WHEREFORE**, Plaintiff Cory Meek respectfully requests that this Honorable Court enter judgment in his favor and against Defendant Lancaster Mennonite School and the Court:

(A) Award Plaintiff actual damages for loss of revenue, including back pay, differential pay, future earnings and lost benefits with interest;

(B) Award Plaintiff compensatory damages for distress, lost career, embarrassment, and humiliation;

(C) Award Plaintiff punitive damages;

(D) Award Plaintiff costs of this action and reasonable attorney's fees;

(E) Award Plaintiff all other relief to which Plaintiff may appear entitled or which the Court deems appropriate and just.

## COUNT II

## VIOLATIONS OF THE PHRA

### CORY MEEK V LANCASTER MENNONITE SCHOOL AND PAM TIESZEN AND LORRI HENGST

54. The allegations of paragraphs 1 thru 53 are incorporated by reference.

55. The conduct by Defendants described above constitutes violations of the Pennsylvania Human Relations Act.

56. Individually named defendants Pam Tieszen and Lorri Hengst aided and abetted discrimination in violation of the Pennsylvania Human Relations Act.

57. The conduct by Defendants described above was willful within the meaning of the Pennsylvania Human Relations Act.

**WHEREFORE**, Plaintiff Cory Meek respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and the Court:

(A) Award Plaintiff actual damages for loss of revenue, including back-pay, differential pay, future earnings and lost benefits with interest;

(B) Award Plaintiff compensatory damages for emotional and physical distress, lost career, embarrassment, and humiliation;

(C)     Award Plaintiff costs of this action and reasonable attorney's fees;

(D)     Award Plaintiff all other relief to which Plaintiff may appear entitled or which the Court deems appropriate and just.

                                                        Respectfully submitted:

                                                        *s/ Nina B. Shapiro, Esquire*

                                                        Attorney for Plaintiff Meek
                                                        PA #44040
                                                        53 North Duke Street, Suite 201
                                                        Lancaster, PA 17602
                                                        717-399-8720
                                                        bgdnbs@aol.com
                                                        ninashaplaw@aol.com

DATE:  December 2, 2020